UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

V.

Joshua Meighen,

Defendant.

**DEFENDANT'S
SENTENCING
MEMORANDUM**

Case No.:

5:21-CR-00388-001

## I.    INTRODUCTION

The Defendant, Joshua Meighen, by and through his attorney, Kerry L. Buske, Esq., respectfully submits this Sentencing Memorandum in connection with his sentencing currently scheduled on July 25, 2022.  It is respectfully requested that the Court, in the exercise of its discretion, and in consideration of the factors and provisions of 18 U.S.C. §3553(a), impose a non-guideline sentence.   For the reasons set forth in this Sentencing Memorandum, it is respectfully requested that a just sentence that is "sufficient, but not greater than necessary, to comply with the basis aims of sentencing" would require a sentence to home confinement or a sentence of much less imprisonment for Mr. Meighen than the advisory guidelines set forth in the Presentence Investigation Report ("PSIR").

## II.    SENTENCING CONSIDERATIONS

Mr. Meighen was born into a family already struggling with the traumatic loss of his older brother in a fire and the loss of an older sister to SIDS.   Mr. Meighen's father, John, struggled with the loss of his children and became cognitively diminished after suffering a stroke.   His father left his mother before Joshua turned 3 years old and provided little to no support for the family.   His mother is from a Jewish Orthodox family and Joshua's religious upbringing was overseen by his mother's family.

1

His mother's extend family often attempted to help his single mother, but Jacki Meighen's significant mental health issues often created distance amongst the family.    His mother was often physically abusive and struggled to provide for her children.  By the age of 12, Mr. Meighen was removed from her care and placed in the care of the New York State Office of Children and Family Services (OCFS).  *See* PSIR ¶ 56.  Mr. Meighen remained in the care of the state and was transferred to various OCFS facilities until he was the age 16.  *See* Id.  In November 2009, at the age of 17, Mr. Meighen was arrested for Criminal Possession of Stolen Property in the Fourth Degree. *See* PSIR ¶ 44.   At the age of 18, Mr. Meighen was sentenced to his first period of incarceration in state prison.  *See* PSIR ¶ 45.

Mr. Meighen is biologically the father of two children.  He has a son that is 11 years old and a daughter that is 9 years old, both of his children live with their mother in the New York City Area. After serving two separate terms of imprisonment in New York State, Mr. Meighen moved to South Carolina.  Mr. Meighen resides in South Carolina with his wife, Stephanie, and his two stepdaughters.

Mr. Meighen suffers from numerous physical health issues including non-rheumatic aortic valve stenosis. *See* ¶ PSIR 64.   In November 2001, Mr. Meighen was arrested in the state of South Carolina on the present case.  After being taken into custody, due to complications with not receiving appropriate medicines, Mr. Meighen's began having seizures and he was placed in a medically induced coma.  *See* Id.  Throughout his incarceration during the pendency of this case, Mr. Meighan has been in and out of various hospitals. *See Exhibit A*: Medical Records from UHS Wilson Memorial Hospital, Adm: 3/16/2022, D/C: 3/28/2022; *Exhibit B*: Medical Records from UHS Wilson Memorial Hospital, Adm: 4/17/2022, D/C: 4/18/2022; *Exhibit C*: Medical Records from UHS Wilson Memorial Hospital, Adm: 4/19/2022, D/C: 5/5/2022.    On May 5, 2022, Dr. Oneeb Ahmad reported the following in Mr. Meighen's Discharge Summary:

> *Patient underwent anterior cervical discectomy and fusion on 3/22/22 followed by a month of inpatient therapy and then was returned to jail; on 4/20/22 patient was admitted for sepsis due to pneumonia; on 4/25/22 patient underwent a bilateral pulmonary embolism( acute massive embolism) with right ventricular strain; patient continuing to report **chronic left side weakness**; congenital heart valve abnormality noted; and patient was discharged with the expectation that a vascular surgery would be performed for removal of IVF filter within three months.*

*See* Exhibit C, p. 57- 59. After his release from UHS Wilson Memorial in May, Mr. Meighen's severe physical condition prohibited him from returning to a local jail. *See* Exhibit C, p. 59.   Presently, Mr. Meighen is in a nursing home in Bronx, New York and confined to a wheelchair.  Mr. Meighen reports that he was hospitalized again for three days during the first week of July.   The medical records filed as exhibits further detail the complexities of Mr. Meighen's physical condition.    Additional details regarding Mr. Meighen' personal life is set forth in the Pre-Sentence Investigation Report and character letters filed separately in support of this Sentencing Memorandum.

### III.    SENTENCING CALCULATIONS, ISSUES, AND RECOMMENDATIONS

#### A.  The PSIR Overstates the Defendant's Criminal History

As the Court is aware, the purpose of the Criminal History Chapter of the Sentencing Guidelines is to address a defendant's past criminal conduct to the extent that such conduct is relevant to the purpose of sentencing.   The Introductory Commentary lays out, past criminal conduct **may be** relevant to punishment, general deterrence, the need to protect the public from further crimes of a particular defendant, and the likelihood of successful rehabilitation of a particular defendant.

The defendant's criminal history score is overstated in ¶ 44 and ¶ 45 of the PSIR.  On May 5, 2010, the defendant was an 18-year-old male with no prior convictions and received a split sentence of 6 months jail and 5 years of probation on Dkt No: 2010-111 and on Dkt. No. 2010-112 for two counts of Criminal Possession of Stolen Property in the Fourth Degree. *See* PSIR ¶44, ¶ 45.   The Defendant was sentenced *on the same day* for both cases and the sentences were imposed concurrently.  On June 29,

3

2011, the defendant was again sentenced concurrently on violations of probation on both the above-mentioned cases.  Also on June 29, 2011, ¶ 46 of the PSIR references a sentence imposed on Dkt. No.: 2010-575, which was imposed on the same day the defendant was sentenced on the two violations of probation.  The sentence for Dkt. No.: 2010-575 was imposed concurrently to violations of probation.  The PSIR adds a total of 9 criminal history points for three convictions on non-violent felony offenses that occurred over eleven years prior to Mr. Meighen's arrest in this case.   Mr. Meighen served a single indeterminate period of incarceration for all three offenses.  Significantly, Mr. Meighen had not been convicted of a misdemeanor or a felony offense prior to arrest in 2010 at the age of 17 and the pronouncement of these concurrent sentences at the age of 18.

It is undisputed, that despite Mr. Meighen's young age at the time he was charged with the conduct cited in ¶44. ¶45, and ¶ 46 of the PSIR, that is his conduct was illegal and wrong.  However, the United States Supreme Court has considered the significant scientific research and information relative to brain development in adolescents.  *See Roper v. Simmons*, 543 U.S. 551 (2005); *Miller v. Alabama*, 576 U.S. 460 (2012).   These decisions have prompted Courts to consider that the human brain is not fully formed until the mid-twenties.  *Id.*  Adolescents underestimate risks and they are more susceptible to stress, more emotionally volatile, and less cable of controlling emotions.  These adolescent traits can undermine an individual's decision-making capacity.  This is not to imply that Mr. Meighen did not have the capability to distinguish between right and wrong, but that he had an inability to weigh risks and benefits accurately.   Mr. Meighen has a criminal history, but the defense respectfully submits that the Court should score the non-violent concurrent sentences stemming from conduct that occurred when Mr. Meighen was 17 and 18 years old as a single period of incarceration.  *See* PSIR ¶ 44, ¶ 45, ¶46.

In the alternative, it is respectfully submitted that, pursuant to U.S.S.G. § 4A1.3 (b), a downward departure in Mr. Meighen's criminal history is warranted here because a Criminal History V "substantially

4

over-represents the seriousness" of Mr. Meighen's criminal history and "the likelihood that he will commit other crimes." Neither of Mr. Meighen's two prior E -level non-violent convictions for Criminal Possession Stolen Property in the Fourth Degree stemming from incidents that occurred when Mr. Meighen was 17- and 18-year-old young man suggest the need for greater punishment. The impact is significant, as excluding these convictions or scoring these convictions as concurrent sentences would result in an advisory sentencing guideline range of imprisonment of several year less for Mr. Meighen. For all these reasons, it is respectfully submitted that Mr. Meighen's Criminal History Category should be reduced.

**B. The Base Level Offence should be calculated as set forth in the agreed upon plea agreement**

The defense respectfully submits that the offense level should be calculated as agreed upon in the plea agreement. The agreed upon offense level in the plea agreement is a base level *20* pursuant to U.S.S.G. § 2K2.1(a)(4)(A) with two levels added pursuant to U.S.S.G § 2K2.1 (b)(1)(A) because the offense level involved between three and seven firearms. *See* Plea Agreement, p. 5-6. The parties agreed to 2-level downward adjustment pursuant to U.S.S.G. §3E1.1(a) for notification to the Government of a timely plea and 1-level downward adjustment pursuant §3E1.1(b) for acceptance of responsibility. Thus, pursuant to the agreed upon plea agreement the base level after adjustments would be *19*. *See* Id. The parties also agreed to a waiver of rights to appeal for any sentence to term of imprisonment of 78 months or less. *See* Plea Agreement, p. 7.

The defense continues our objection to the four-level enhancement pursuant to U.S.S.G. §2K2.1 (b)(1)(b). First, the defendant asserts that the Government lacks jurisdiction and venue to include all eight firearms in the calculation for the total number of firearms. Federal Authorities in South Carolina never sought to charge the defendant with the additional firearms recovered. The assertion by Probation that offense involved eight firearms lacks factual support. The additional firearms, some long-guns

recovered from within the defendant's home, were not involved in the "same course of conduct or common" scheme as the handguns that were packaged and shipped to New York. This assertion is further supported by the defendant not being charged for the additional firearms recovered from the defendant's home in South Carolina.

The defense further objects to the additional four-level enhancement pursuant to U.S.S.G. ¶ 2K2.1 (b) (5).  The defense asserts that the agreed upon plea agreement adequately reflects a two-point enhancement. As noted in Application Note 2 to U.S.S.G. §1B1.3: "In certain cases, a defendant may be accountable for a particular conduct under more than one subsection of this guideline.  If a defendant's accountability for a particular conduct is established under one provision of this guideline, it is not necessary to review alternative provisions under which such accountability might be established."  Thus, there is already an enhancement that has been applied that appropriately accounts for Mr. Meighen's possession of firearms in this case and the additional enhancement is not necessary.  Thus, the defendant believes that the two-level enhancement in the plea agreement is the appropriate enhancement and objects to the additional six points applied to the offense level in the advisory guidelines.

## IV.    AVAILABLE DOWNWARD DEPARTURES

Based upon the facts and circumstances surrounding the defendant's serious ongoing medical treatment, the Court has the discretion to decrease the offense level along with the advisory guideline range of imprisonment through the application of a downward departure.   Pursuant to U.S.S.G. § 5H1.4, there is a basis for departure because as demonstrated by the numerous medical records filed separately as exhibits, Mr. Meighen's "extraordinary physical impairment" demonstrates that he is "seriously infirm defendant" and "home detention may be as efficient as, and less costly than imprisonment."

Mr. Meighen has been in and out of several hospitals, endured surgeries, is confined to a wheelchair and is need of a follow-up surgery. *See* Exhibit A, Exhibit B, Exhibit C.  Last March, a CT

scan revealed moderate to severe spinal canal stenosis with cord compression and narrowing of the left

neural foramina requiring a surgeon to perform anterior cervical discectomy and fusion. *See* Exhibit A,

p.57.   After the surgery, it was noted in the medical records that "Given the patient's complex condition

and risk of further medical complications, rehabilitation services cannot safely be provided at a lower

level of car such as a skilled nursing home." *See* Exhibit B, p. 39.   It was advised that Mr. Meighen

undergo a comprehensive inpatient rehab program with daily physician visits not available at a lower

level of care. *See Id.*

      Accordingly, Mr. Meighen was admitted to Sandiford inpatient rehabilitation facility to receive

at least 3 hours of integrated therapy 5 out of 7 days per week. *See Id.*    After a period of inpatient

rehabilitation Mr. Meighen was discharged on April 15, 2022, to Broome County Jail.   Although some

aftercare to the surgery was provided during inpatient treatment, within five days of his return to the

Broome County Jail Mr. Meighen returned to the hospital.    The discharge summary prepared by Dr.

Oneeb Ahmad reported the following:

> *Presented to Wilson ED on 4/20/2022 and was admitted for sepsis due to pneumonia and started
> on antibiotics.  On 4/25/2022 patient had upper response called in for lethargy and patient was
> found to have acute extensive bilateral pulmonary embolism with right ventricular strain, also
> found to have extensive left lower extremity DVT .... Patient underwent successful bilateral
> catheter directed pulmonary artery thrombectomy. Given extensive left lower extremity DVT
> vascular surgery was consulted, and patient underwent IVC filter placement... On 5/4/2022,
> Patient improved and denied significant symptoms apart from chronic left-sided weakness....
> Patient will be discharged anticoagulation and I will advise the patient to follow with PCP,
> vascular surgery for removal of IVC filter within 3 months, hematology and oncology to assess
> the duration of anticoagulation and neurosurgery.*

*See* Exhibit C, p.59.   After his last hospitalization, Mr. Meighan was discharged to a medical

facility. *See* Id.   The medical records filed as exhibits demonstrate the complexities of medical care

required to care for Mr. Meighen.   Mr. Meighen requires assistance getting in and out of bed and the

use of the wheelchair.   These physical impairments are further complicated by Mr. Meighen's heart

condition and recent blood clots.  Accordingly, it will be difficult and expensive for Mr. Meighen to get the appropriate long -term treatment he requires in federal custody.

Imprisonment, without continuous appropriate medical treatment and physical therapy, does not serve the long- term interest of society and could result in the further medical decline to Mr. Meighen's physical condition.  As recognized in the Sentencing Commission's policy statement on physical condition, extraordinary impairments provide reasons for downward departures for "seriously infirm" defendants, including to home detention at initial sentencing "as efficient as, and less costly than, imprisonment." U.S.S.G. § 5H1.4; see also 18 U.S.C. § 3553(a)(2)(D) (consideration of providing needed medical care in the most effective manner).

## V.     MOTION FOR NON-GUIDELINE SENTENCE

Although the Court is required to consider these **advisory** sentencing guidelines, for several reasons set forth below, the sentencing guidelines do not lead to a reasonable or just sentence for Joshua Meighen given his deteriorating medical condition.  Pursuant to 18 U.S.C. § 3553 the Court must impose a sentence "sufficient, but not greater than necessary" to comply with the basic aims of sentencing.  It is respectfully suggested that, upon consideration of those aims and the factors set out in § 3553 (a), a fair and just sentence here would be a sentence to home confinement, together with supervised release, that would allow for Mr. Meighen to receive the medical care required for his condition along with the assistance of his family to care for his physical impairments.

### A. The Nature and Circumstance of the Offense and History and Characteristics of the Defendant

A Court must consider the nature and circumstance of an offense and the history and characteristics of the defendant when settling on an appropriate sentence.  18 USC § 3553 (a)(1).   Mr. Meighen was born into a family struggling with the loss of his older brother in a tragic fire and his older sister to SIDS.

8

Joshua's upbringing was stressful as it was directed by a grief-stricken single mother that battled severe mental and physical health issues. At a young age, Mr. Meighen's father left his mother alone to raise him and his sister. He was removed from his mother's care and placed in the custody of the state at the age of 12. *See* PSIR ¶ 56. Mr. Meighen remained in the care of the state for approximately four years. *See Id.* The defense does not offer this as an excuse for Mr. Meighen's conduct in this case, but rather as an explanation as to how he drifted as a teenager until he was ultimately convicted of a non-violent crime by the age of 18.

Mr. Meighen became the father of two children by the time he was 21 years old. After completing two separate periods of incarceration in New York, Mr. Meighen moved to South Carolina. His longtime friend became his wife, and they were raising her two children together prior to his arrest. Mr. Meighen's health condition drastically declined after he was taken into custody on this case. After being taken into custody on this case, due to the incorrect or medicines or lack of medicines for his heart condition, Mr. Meighen began to have seizures and was placed in a medically induced coma. *See* PSIR ¶ 64.

Last March, Mr. Meighan was discovered unconscious face down in his jail cell at the Broome County Jail and was rushed to the hospital to UHS Wilson Memorial Hospital. On March 20, 2022, Dr, Mohammad Ziadi reported:

> *Patient currently requires significant assistance with bed mobility, feeding, grooming, sitting balance, toileting, upper lower extremity ADL skills, mobility ambulation and transfers and likely will make excellent functional improvement with intensive acute inpatient rehabilitation he will require further monitoring of his postsurgical state, postsurgical hematologic monitoring , close monitoring for his evolving infectious risk, continued titration of his opioid pain medications in order to achieve adequate analgesic control during his therapy care in order to ensure optimal safety during his therapy sessions, an therefore will require daily supervision by rehabilitation physician.*

*See* Exhibit A, p.56-57. Mr. Meighen underwent an emergency spinal surgery for severe spinal canal stenosis with cord compression and narrowing of the left neural foramina. After the surgery, Mr. Meighen was bedridden, in a neck brace, and required the use of the wheelchair. Unfortunately, Mr.

Meighen's physical health continued to decline after he was released from the hospital.   Upon Mr. Meighen's return to Broome County Jail, he developed several blood clots.   Mr. Meighan was readmitted to the hospital to obtain medical intervention for his blood clots and was also diagnosed with pneumonia.   After Mr. Meighen was again discharged from the hospital, he was transferred to Windsor Park Nursing Home in Queens, New York.   Due to the inability of Windsor Park Nursing Home to appropriately care for him, Mr. Meighen was transferred to Gold Crest Care Center in Bronx, New York.   To date, Mr. Meighen cannot stand up on his own, requires assistance to take a shower, and is confined to a wheelchair.   Mr. Meighen reports that he is in a great deal of pain and in need of significant physical therapy that the nursing home cannot administer.

Despite the efforts to move my client to new facility, it appears the level care is inadequate to address my client's complex medical conditions.   Mr. Meighen is from South Carolina, and he has family that is willing to assist with his rehabilitation.   His wife and other family members are willing to arrange for the appropriate medical care.  Mr. Meighen currently requires significant medical treatment, including extensive physical therapy and is awaiting a follow-up surgery.  *See* PSIR ¶ 66.   As set forth in the character letters provided to the Court in a separate filling, Mr. Meighen does have a separate support system that can assist him with his medical needs as well as his re-entry to society.   Therefore, we respectfully ask the Court to consider the extraordinary circumstances that Mr. Meighen's ongoing complex medical issues present and for the Court to impose a non-guideline sentence of home confinement.

### B.  Section 3553 (a)(2) Factors

As the Court is aware, a defendant may argue at sentencing that the Court may impose a Non-Guideline Sentence because the recommended Guideline Sentence fails to reflect considerations in 18 U.S.C. §3553(a), or because the case warrants a Non-Guideline Sentence.  In this case, there appears to

be a combination of circumstances not adequately taken into consideration by the Sentencing Commission in formulating the recommended Sentencing Guidelines.  A Non-Guideline sentence must be reflective of the seriousness of an offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public and provide the defendant with the needed educational or vocational training, medical care, or other corrective treatment.  18 U.S.C. § 3553(a)(2)(A)-(D).    The advisory sentencing guideline is but one of several factors set forth in Section 18 U.S.C. § 3553 (a) and is not by itself and indication of a reasonable or just sentence for Mr. Meighen.    Thus, we respectfully ask the Court to consider a sentence other than the suggested guideline range.

Although Mr. Meighen has accepted responsibility for his wrongdoing, he has also taken advantage of the time that he has been incarcerated to consider the impact of his conduct on others.  While being sick, hospitalized, incarcerated and away from his family he has developed a deep understanding for the poor choices he made that lead to his incarceration.  The defendant has been deterred, he now knows and understands the seriousness of the offense, respects the law, and is not likely to recidivate.

As noted in the PSIR, Mr. Meighen's physical condition is so severe that he requires assistance to use the bathroom. *See* PSIR ¶67.   Mr. Meighen's physical and mental condition following his significant health decline realistically foreclose the probability of dangerous recidivism.    Having undergone a significant period of incarceration and having experienced the deterioration of his physical health that now confines him to a wheelchair, Mr. Meighen no longer constitutes a danger to others in the community.  Furthermore, an ankle bracelet or home confinement could adequately ensure the safety of the community.

### B.  Advisory Guideline and Policy Statement- Section 3552 (a) (4) and (a)(5)

The advisory sentencing guidelines is *but one of several factors* set forth in Section 3553 (a) and is not by itself an indication of a reasonable or just sentence for Mr. Meighen.    Although the Court is required to consider the advisory sentencing guidelines, and it is expected that the Government will

recommend that Mr. Meighen be sentenced to the advisory guideline sentence, for many reasons the advisory sentencing guideline is not an indication of a reasonable or just sentence for Mr. Meighen.

There is no mandatory minimum for the charged conduct. The physical hardships endured by Mr. Meighen present extraordinary reasons for a fair and just sentence far below the advisory guidelines. Mr. Meighen walked on his own two feet into federal custody. For sentencing, he will appear virtually from a nursing home confined to his bed and unable to walk. The Court, therefore, is allowed to take Mr. Meighen's declining health into consideration, along with other 18 U.S.C. § 3553 factors, in determining a fair and just sentence and on that is not greater than necessary to comply with the specific purposes set forth in 18 U.S.C. § 3553 (a) (2).

## VI.   CONCLUSION

For all the foregoing legal and factual reasons, the defense respectfully submits the Court should impose a sentence far less than what is set forth in the advisory guidelines. The advisory guidelines fail to take into consideration the significant mitigating circumstance presented by the decline in Mr. Meighen's physical health since the time of his initial arrest. Mr. Meighen's physical impairments present extraordinary and compelling reasons that trigger a reduction in the advisory guidelines and a lesser sentence to be imposed. The defense submits that a period of home confinement would be a reasonable and just sentence. Finally, the defendant requests that the Court recommend that if he is incarcerated, he be placed in a BOP facility or nursing home as close as possible to his home and family in South Carolina.

Dated:  July 22, 2022

Respectfully submitted,

Kerry L. Buske, Esq.
247 West Fayette Street, Suite 300
Syracuse, New York 13202
(315) 671-8720
Bar Roll No.: 700625